E-FILED
Tuesday, 21 February, 2012  03:12:44 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | |
|---|---|
| PATRICK O'KEEFE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 10-cv-3149 |
| HAROLD GIST, in his capacity as a police officer, and THE CITY OF GIRARD, ILLINOIS, an Illinois municipal corporation, | ) ) ) ) ) ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

This matter has been referred to this Court for a Report and Recommendation on the Motion to Dismiss (d/e 9) (Motion) pending in this case. Text Order entered February 6, 2012. For the reasons set forth below, this Court recommends that the Motion should be ALLOWED.

## STATEMENT OF FACTS

For purposes of the Motion, the Court must accept as true all well-pleaded factual allegations contained in the Complaint (d/e1) and draw all inferences in the light most favorable to Plaintiff Patrick O'Keefe. Hager v. City of West Peoria, 84 F.3d 865, 868-69 (7th Cir. 1996); Covington Court, Ltd. v. Village of Oak Brook, 77 F.3d 177, 178 (7th Cir. 1996). Documents attached to the Complaint are part of the

Complaint for all purposes. Fed. R. Civ. P. 10(c). The Court may also take judicial notice of matters of public record, such as court records, and consider those matters in resolving the Motion. Henson v. CSC Credit Services, 29 F.3d 280, 284 (7th Cir. 1994).

Plaintiff O'Keefe alleges that he lives in Glenarm, Sangamon County, Illinois. In or about 2004, O'Keefe bought a purebred English mastiff dog named Boomer ("Dog" or "Boomer") for about $1,500.00. O'Keefe kept the Dog as a pet at his Glenarm residence. A micrcochip ("Chip") with an identifying registration number was imbedded in the Dog. The Chip could be scanned to determine ownership of the Dog. O'Keefe registered the Dog and the Chip registration number with the Sangamon County, Illinois, Animal Control Office, and received a Avid MicroChip certificate dated February 22, 2005. Complaint, Exhibit A.

Scanners designed to read microchips have been available for use by law enforcement, animal control officers, and others. Scanners were available in Virden, Illinois, a municipality in Macoupin County, Illinois, approximately ten miles north of Defendant City of Girard, Illinois ("Girard"). Defendant Girard is also in Macoupin County, Illinois. The Macoupin County Animal Control Office also had scanners, as well as veterinarians in and around Girard. These scanners were available to Girard police officials. Complaint, ¶ 5.

Girard's municipal code of ordinances contained a chapter entitled "Animals." Complaint, Exhibit B, Chapter 3, Animals (the "Ordinance"). Defendant Harold Gist was a Girard police officer authorized to enforce the Ordinance. Complaint, ¶¶ 6-7.

On or about June 7, 2009, the Dog escaped from O'Keefe. The Dog did not have on a collar or any identification tags. The Chip, however, was still imbedded in the Dog. On June 26, 2009, Gist received a message indicating that a lost dog was present on a Girard business property. Gist responded to the message and removed the Dog from the Girard business property because the Dog was wandering astray. Complaint, ¶ 10. The Court takes judicial notice that Girard is approximately fifteen to twenty miles southwest of O'Keefe's residence in Glenarm, Illinois, from which the Dog escaped.

The Ordinance provided for impoundment of dogs running at large:

> 3-2-8 **IMPOUNDMENT OF DOGS RUNNING AT LARGE OR UNLICENSED DOGS; CITATION OF OWNER OR KEEPER.**
>
> (A) It shall be the duty of such employees and officers of the Police Department as shall be designated for that purpose by the Mayor to take up and impound in such place as may be designated and set a part for that purpose, any dog found running at large or unlicensed in the City, contrary to any of the provision of this Chapter or other regulations of the City or State.

> (B) When dogs are found running at large or unlicensed and their ownership is known to the designated employee(s), such dogs may be impounded at the discretion of such employee(s), but the employee(s) may cite the owner of such dog to answer charges of violation of this Chapter.
>
> (C) Any dog permitted to run withing the City is hereby declared to be a nuisance.
>
> (D) Any impounded dog which shall not be redeemed within **seven (7) days** shall be humanely destroyed or otherwise disposed of by the poundkeeper.
>
> (E) The City Council may establish a reasonable fee by motion for each day that a dog is housed in the pound. **(See 510 ILCS Sec. 5/10)**

Ordinance, § 3-2-8 (emphasis in the original).[1] The Ordinance further provided that the officials at the City pound "shall make reasonable attempts to contact the owner, informing him of the impounding of his dog and shall cite the owner or keeper of such dog to answer charges for violation of this Chapter." Ordinance, § 3-2-9. The Ordinance further provided procedures for the owner of a dog to redeem his or her dog from the pound. Ordinance, § 3-2-13.

Gist did not take the Dog to be impounded. Rather, Gist put the Dog in his squad car and drove to another business to investigate to determine the identity of the Dog's owner. In the course of the investigation, Gist

---

[1] O'Keefe's Complaint does not allege the specific section of the Ordinance at issue. O'Keefe attached the entire Ordinance to the Complaint. The Ordinance is, therefore, part of the Complaint for all purposes. Fed. R. Civ. P. 10(c). The Court considered the entire Ordinance in evaluating the allegations in the Complaint.

determined that a woman named Laurent found the Dog several weeks earlier, and gave the Dog to a second woman named Lewis. Lewis took possession of the Dog because Laurent was going to turn the Dog over to Sangamon County Animal Control. Lewis in turn gave the Dog to a third person because the Dog did not get along with Lewis' other dogs. The Dog escaped from the possession of the third person shortly before Gist picked the Dog up as a stray. Gist did not find anyone who claimed ownership of the Dog and did not attempt to scan the Dog for microchip identification. O'Keefe alleges that Gist knew that embedding registered microchips into animals was a recognized method of identifying pets. Complaint, ¶¶ 11-14.

Gist informed Lewis that she was the owner of the Dog pursuant to the Ordinance. The Ordinance defines "owner" as follows:

> 3-1-2 **DEFINITIONS.** For purposes of this Chapter, the following definitions are adopted and shall be used:
>
> . . . .
>
> **"OWNER".** For purposes of this Code, the word "owner" means a person having a right of property in a dog or other animals or who keeps or harbors a dog, or who has a dog in his care, or who acts as its custodian, or who knowingly permits a dog or other domestic animal to remain on or about any premises occupied by him. **(See 510 ILCS 5/2.16)**

Ordinance, 3-1-2 Definitions (emphasis in the original). Gist told Lewis she would be in violation of the Ordinance unless she relinquished ownership or took appropriate care of the Dog. Lewis relinquished possession of the

Dog.  Complaint, ¶ 15.  The Ordinance states that any unwanted animals "should be delivered to the County Animal Control Facility for proper disposal."  Ordinance, § 3-1-6.  Gist did not deliver the Dog to Macoupin County Animal Control or have the Dog impounded.

After Lewis relinquished her claim to the Dog, Gist took the Dog to Girard police headquarters where he was called by a person named David Hagan.  Hagan told Gist he would be interested in becoming the owner of the Dog.  Gist gave Hagan the Dog and stated that Hagan would become owner of the Dog pursuant to the Ordinance by feeding it and taking care of it, and so, would be responsible for any violations of the Ordinance.  Complaint, ¶ 16.

On or about July 26, 2009, O'Keefe discovered that Hagan had possession of the Dog.  O'Keefe demanded that Hagan give back the Dog, but Hagan refused.   O'Keefe then commenced a replevin action against Hagan. Memorandum of Law in Support of Motion to Dismiss (d/e 10) (Defense Memorandum), Exhibit 1, Verified Complaint for Replevin, Conversion, and Intentional Infliction of Emotional Distress, O'Keefe v. Hagan, Macoupin Co. Circuit Court Case No. 09 LM 130 ("State Court Action").  In March 2010, the Macoupin County, Circuit Court issued an Order of Replevin directing the return of possession of the Dog to O'Keefe during the pendency of the State Court Action.  Defense Memorandum,

Exhibit 2, Order of Replevin. The Order of Replevin required O'Keefe to post a $3,000.00 bond during the pendency of the State Court Action. The Court in the State Court Action awarded O'Keefe full ownership of the Dog in December 2010, at which point the $3,000.00 bond was returned to O'Keefe. Motion for Leave to Refile Response to Motion to Dismiss Instanter (d/e 17), attached Plaintiff's Brief in Response to Motion to Dismiss (Plaintiff's Response), at 5.

Based on the allegations in the Complaint, O'Keefe alleges three counts against the Defendants. Count I alleges a claim against both Defendants for denial of property without due process. O'Keefe alleges that he had a property interest in the Dog. O'Keefe alleges that Gist did not attempt to scan the Dog to determine the owner. O'Keefe alleges Gist turned over the Dog to Hagan without notice to O'Keefe or a hearing. O'Keefe alleges that,

> Gist's actions . . . were done . . . in reliance upon an official ordinance of Girard which Gist understood to decree that any person who provided food and shelter to a stray dog automatically became legal owner of that dog, without any notice to any prior owner or hearing regarding ownership rights. In accordance and consistent with that understanding, Gist unilaterally determined and decided:
>
> A. That Lewis had been Boomer's owner by virtue of having voluntarily taken possession of Boomer and providing Boomer with food and shelter;

> B. That Lewis, as Boomer's owner, had the right to voluntarily relinquish ownership, . . . ;
>
> C. That because Lewis had relinquished the ownership . . . , Gist was entitled to take whatever action he deemed acceptable to "adopt" Boomer out to a new owner; and
>
> D. That Gist had authority to summarily transfer the ownership of Boomer to Hagan.

Complaint, ¶ 23. O'Keefe alleges that Gist's actions violated his right to property without due process, and as a result, O'Keefe suffered damages. Complaint, ¶¶ 24-25. Count I seeks damages from both O'Keefe and Girard.

Count II seeks a declaratory judgment against Girard. O'Keefe alleges that the Girard police department interprets the Ordinance in the same manner as Gist, that, "a person can automatically become the owner of a dog, with all rights and liabilities attendant with such ownership status, merely by feeding and sheltering the dog, and without any notice to or hearing involving the prior owner." Complaint, ¶ 29. O'Keefe asks the Court to declare that the Ordinance as interpreted and applied in this case is unconstitutional.

Count III alleges an Illinois common law claim for conversion against Gist. O'Keefe alleges that Gist lawfully obtained possession of the Dog when he picked him up wandering on a business's property in Girard.

O'Keefe alleges that Gist unlawfully gave possession and purported to give ownership of the Dog to Hagan, "and thus converted O'Keefe's valuable property." Complaint, ¶ 37. O'Keefe alleges that he suffered damage thereby. Complaint, ¶ 38. The Defendants now move to dismiss the Complaint.

ANALYSIS

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is proper where a complaint fails to state a claim on which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Federal Rules require only "a short and plain statement of the claim showing that the pleader is entitled to relief," and allegations must be "simple, concise, and direct." Fed. R. Civ. P. 8(a)(2) & (d)(1). While a complaint need not contain detailed, specific factual allegations, it must contain sufficient facts to "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible if the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). A claim is plausible on its face if it provides the defendant fair notice of what the claim is and the grounds upon which it rests. George v. Smith, 507 F.3d 605, 608 (7th Cir. 2007). The Court addresses O'Keefe's three Counts in order.

A. Count I Due Process

The Fourteenth Amendment states that no state shall deprive a person of property without due process of law. U.S. Const. Amend XIV. To state a claim for violation of due process, O'Keefe must allege that he had a property interest, he was deprived of his property interest, and that deprivation was without due process of law. Luellen v. City of East Chicago, 350 F.3d 604, 613 (7th Cir. 2004). O'Keefe alleges a property interest in the Dog. He alleges that he lost the Dog in June 2009, that Gist took possession of the Dog under color of law as a Girard police officer, that Gist gave the Dog to Hagan pursuant to Gist's understanding of the Ordinance in July 2009, and that Hagan refused to return the Dog to O'Keefe. The Court takes judicial notice that O'Keefe commenced the State Court Action, recovered possession of the Dog in March 2010 upon the posting of a $3,000.00 bond, and secured a judicial determination of full ownership of the Dog and a return of the bond in December 2010. O'Keefe was, thus, deprived of his property from roughly July 2009 to December 2010. The issue is whether he was denied that property without due process of law.

Due process is a flexible concept and calls for such procedural protections that the particular situation demands. Mathews v. Eldridge, 424 U.S. 319, 334 (1976). O'Keefe alleges that Gist attempted to deprive

O'Keefe permanently of his property by purporting to give Hagan complete ownership of the Dog. An individual is generally entitled to notice and an opportunity for a hearing prior to such a permanent deprivation of his property interest. Porter v. DiBlasio, 93 F.3d 301, 305 -306 (7th Cir. 1996) (citing Logan v. Zimmerman Brush Co., , 455 U.S. 422, 434 (1982); Goss v. Lopez, 419 U.S. 565, 579 (1975)). A pre-deprivation hearing, however, is not required in all circumstances. For example, post deprivation procedures, including common law judicial remedies, may be adequate where the deprivation is random or unauthorized. Leavell v. Illinois Dept. Of Natural Resources, 600 F.3d 798, 802 (7th Cir. 2010). In such cases, the plaintiff must allege that he availed himself of the available post deprivation remedies and those remedies were not sufficient. Id.

In this case, Gist's actions were unauthorized. The Ordinance stated that strays running at large, such as the Dog, were to be impounded. Ordinance, § 3-2-8(A), quoted above. The Ordinance directed the pound officials to take reasonable steps to identify the owner of the Dog, not Gist. Ordinance, § 3-2-9. The Ordinance further provided that all unwanted animals should be delivered to Macoupin County Animal Control. Ordinance, § 3-1-6. Gist, thus, should have taken the Dog to the Girard pound to be impounded as a stray or to Macoupin County Animal Control as an unwanted animal. Gist had no authority to give the Dog to anyone.

Because Gist's actions were unauthorized, O'Keefe must allege that he availed himself of post deprivation remedies and those remedies were not sufficient. Leavell, 600 F.3d at 802. O'Keefe cannot make such allegations. He received full relief from the State Court Action.

O'Keefe argues that Gist correctly interpreted the Ordinance to authorize him to change ownership of the Dog. O'Keefe does not identify the provision in the Ordinance on which he relies, and the Court cannot find any such provision. The Ordinance requires impoundment of stray animals. The Ordinance nowhere authorizes police officers to give a stray animal to anyone other than the City pound or Macoupin County Animal Control. Ordinance, §§ 3-1-6 and 3-2-8.

O'Keefe seems to imply that Gist relied on the Ordinance's definition of "owner." Ordinance, § 3-1-2. Section 3-1-2 is a definitions section only, not an operative section. Section 3-1-2 sets forth defined meanings for certain terms "for purposes of the Chapter," not for any other purpose. The section defines the term "owner" to identify the individuals who are responsible for the care and treatment of an animal within Girard in accordance with the operative sections of the Ordinance. The defined term "owner" is broad so that the City can hold individuals who have control over animals accountable for care and treatment of those animals. The definition is not operational and does not declare legal ownership interests

in any animal.  The definition merely creates a defined term for use in the Ordinance.  Thus, Gist did not understand the Ordinance and did not follow the Ordinance.  His actions were unauthorized by the Ordinance.

O'Keefe alleges in Count II that the Girard Police Department interpreted the Ordinance in the same manner as Gist.  Complaint, ¶ 29. This allegation is not in Count I, but the allegation is in the Complaint and the Court should read the Complaint as a whole to determine whether it states a plausible claim.  See Triad Associates, Inc. v. Robinson, 10 F.3d 492, 498 (7th Cir. 1993).  When read most favorably to O'Keefe, the alleged Girard Police Department interpretation of the Ordinance could have constituted an unwritten policy or custom of the Department.  If so, then Gist's actions could have been authorized by that policy or custom.  See Monell v. Department of Social Services of City of New York, 436 U.S. 658, 693-94 (1978); Calusinski v. Kruger, 24 F.3d 931, 936 (7th Cir. 1994).  The Court, thus, must determine whether Gist's alleged actions violated O'Keefe's right to due process assuming those acts were authorized by the unwritten policy or custom.

A pre-deprivation hearing is generally required before a person can be deprived of his property, but not always.  Mathews, 424 U.S. at 335. The Supreme Court listed the relevant factors in Mathews to determine whether a pre-deprivation hearing is required:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews, 424 U.S. at 335. This Court, in effect, must weigh the costs and benefits embodied in these factors to determine the "procedural minima" that due process requires. Van Harken v. City of Chicago, 103 F.3d 1346, 1351 (7th Cir. 1997).

In this case, Gist lawfully took possession of the Dog as a stray within the city limits of Girard. O'Keefe agrees that taking possession of the Dog as a stray was proper. Complaint, ¶ 36. This issue is the disposition of the Dog. Gist had no actual knowledge that O'Keefe was the true, legal owner of the Dog when he gave the Dog to Hagan. The Dog further wore no tag and bore no other visible identification marks. A state actor cannot give notice to someone who is unknown. When notice is not feasible, post deprivation procedures may be adequate. See Walls v. City of Brookfield, 406 F.3d 458, 459 (7th Cir. 2005) (post deprivation remedies were adequate because notice was not feasible).

The issue is whether: (1) Gist was constitutionally required to scan the Dog for the Chip and then give O'Keefe notice and an opportunity for a pre-deprivation hearing before giving the Dog to Hagan; or (2) Gist's visual

inspection of the Dog was constitutionally sufficient, in which case, Gist had no knowledge that O'Keefe was the true owner when he gave the Dog to Hagan, and so, notice was not feasible and effective post deprivation judicial remedies were sufficient to provide O'Keefe due process. Essentially, the issue is whether the constitution requires state and municipal officials to scan stray dogs and cats for microchips.

    The cases cited by the parties are not helpful in addressing this issue. In all of the cited cases involving animals, the state or municipal officials had actual knowledge of the true owner of the animal. Walls v. City of Brookfield, 406 F.3d at 459 (Defendant official knew plaintiff owned the dog); Porter v. DiBlasio, 93 F.3d 301, 303 (7th Cir. 1996) (Plaintiff called defendant official and identified himself as the true owner of horses); Siebert v. Severino, 256 F.3d 648, 651-52 (7th Cir. 2001) (Defendants seized horses from plaintiff's possession and provided plaintiff notice of the basis for the seizure).[2] The cases do not address the constitutional obligation when the official has no actual knowledge of the owner's identity.

---

    [2]O'Keefe also cites Viilo v. Eyre, 547 F.3d 707 (7th Cir. 2008). The Viilo case is a Fourth Amendment case, not a due process case. The Court stated that shooting a dog was a seizure for purposes of the Fourth Amendment. Viilo, 547 F.3d at 710. The defendants in that case shot the dog on the owner's property in the presence of the owner. Id. at 708-09. The case does not address the issue of an unknown owner either.

The Court has carefully considered the particular circumstances alleged in this case and finds that the constitution does not require municipal and state officials to do more that conduct a visual inspection of a stray cat or dog to attempt to determine ownership.  The fiscal and administrative burden of requiring all municipalities to scan every stray cat and dog for microchips would outweigh the burden imposed on pet owners either to put identification tags on the animals or to use post deprivation procedures to recover lost pets.  In this case, for example, Girard does not have a scanner.  Gist would have been required either to leave Girard and travel to Virden or to arrange with private veterinarians to have the Dog scanned.  Either alternative would have taken Gist away from patrolling Girard's streets for some period of time.  These types of burdens would become significant if municipal officials had to take such steps for every stray cat or dog found within a municipality.  The Court finds that the constitution does not require municipalities to take these steps to attempt to identify stray animals.  If a visual inspection of a stray dog or cat found in a municipality does not provide the identity of the owner, then the Court finds that the identity of the owner is unknown for constitutional purposes and effective post deprivation procedures are sufficient process.

O'Keefe notes that the State of Illinois and Macoupin County now require scanning stray animals for microchips.  <u>Motion to Supplement</u>

Response to Motion to Dismiss Instanter (d/e 18), at 2 (citing Illinois Animal Control Act, 510 ILCS 5/5(c); and Macoupin County Animal Control Ordinance No. 2008-03, §§ 1.6(a), 1.7(a)).  These are legislative acts.  Legislative bodies are the appropriate representatives of the people to weigh the benefit of scanning stray animals for microchips against the financial burden on the public fisc.  Constitutional due process, however, defines the "procedural minima."  Van Harken, 103 F.3d at 1351.  The Court is unwilling to declare that the constitutional procedural minimum in this case requires every municipality to scan every stray cat and dog for microchips.

      The Court finds that the constitution only required Gist to conduct a visual inspection of a stray dog or cat, such as the Dog, to determine the identity of the owner.  When he could not determine ownership by such a visual inspection, then effective post deprivation procedures were sufficient to provide O'Keefe with due process. Those post deprivation procedures were effective here.  O'Keefe recovered the Dog.  Gist did not violate O'Keefe's right to due process even if Gist's actions were somehow authorized by some alleged unwritten police policy or custom that misinterpreted the Ordinance.  Count I fails to state a claim.

B. Count II Declaratory Judgment

The Declaratory Judgment Act authorizes this Court to issue declaratory judgments when there is an actual controversy between the parties over a matter within the jurisdiction of this Court. 28 U.S.C. § 2201(a). To constitute an actual controversy, the dispute must be definite and concrete, touching legal relationships of the parties such that a declaratory judgment would provide relief rather than an advisory opinion of what the law would be upon hypothetical facts. MedImmune, Inc., v. Genentech, Inc., 549 U.S. 118, 127 (2007).

In this case, there is no concrete controversy between the parties for which a declaratory judgment would provide relief. The parties disagree on the validity of the alleged Girard Police Department interpretation of the Ordinance, but the disagreement is academic and hypothetical at this point. O'Keefe has the Dog back and is not subject to the laws of Girard because he does not live in Girard. The declaratory judgment would only provide relief if O'Keefe continued his practice of not placing identifying tags on the Dog, the Dog again escaped, the Dog again traveled fifteen to twenty miles to Girard, and Girard police officials again picked up the Dog as a stray. The possibility of this chain of events happening again is clearly remote and hypothetical. This Court is not authorized to provide advisory opinions

on what should happen in such hypothetical circumstances. Declaratory relief, therefore, is not appropriate. Count II fails to state a claim.

C. Count III Conversion

Count III is a state common law supplemental claim for conversion. This Court should decline to exercise jurisdiction over this claim because O'Keefe fails to state a valid federal claim. 28 U.S.C. § 1367(c)(3); Van Harken, 103 F.3d at 1354.

WHEREFORE, the Court recommends that Defendants' Motion to Dismiss (d/e 9) should be ALLOWED. The claims in Counts I and II should be dismissed with prejudice and the claims in Count III should be dismissed for lack of subject matter jurisdiction.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk of the Court within fourteen days after service of an ECF copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file a timely objection will constitute a waiver of objections on appeal. See Video Views, Inc. v. Studio 21, Ltd., 797 F.2d 538, 539 (7th Cir. 1986). See Local Rule 72.2.

ENTER: February 21, 2012

       *s/ Byron G. Cudmore*
       BYRON G. CUDMORE
UNITED STATES MAGISTRATE JUDGE